| | |
|---|---|
| Schweet Linde & Rosenblum, PLLC<br>5601 6th Ave S., Ste. 258<br>P.O. Box 80646<br>Seattle, WA 98108<br>P: (206) 275-1010<br>F: (206) 381-0101 | Judge: Honorable Timothy W. Dore<br>Chapter 11<br>Location: Seattle<br>Hearing Date: November 21, 2025<br>Hearing Time: 9:30 A.M.<br>Response Due: November 14, 2025 |

IN THE U.S. BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| In re<br><br>CRISTINA NICOLETA SUCIU,<br><br>Debtor. | Case No.: 25-12395-TWD<br><br>**CREDITOR NADLAN GROUP LLC'S MOTION FOR RELIEF FROM STAY** |

## I.     INTRODUCTION & RELIEF REQUESTED

Creditor Nadlan Group LLC ("**Nadlan**"), by and through its attorneys Schweet Linde & Rosenblum, PLLC, files this Motion for Relief from Stay ("**Motion**"), and respectfully moves the court for an order: (i) granting relief from the automatic stay imposed by § 362 (a)[1] ("**Automatic Stay**"), and (ii) waiving the 14-day stay of enforceability of orders granting relief from the stay provided by Fed. R. Bankr. P. 4001(a)(4) ("**Stay of Order**").

Nadlan requests relief from the Automatic Stay under § 362(d)(1) so that Nadlan may lawfully pursue its rights and remedies under applicable non-bankruptcy law against debtor Cristina Nicoleta Suciu (the "**Debtor**") and against the real property located at and commonly known as 16028 NE 184th Pl, Woodinville, WA 98072 (the "**Woodinville Property**"). Nadlan also requests *in rem* relief from the Automatic Stay per §362(d)(4) as to the Woodinville Property

---

[1] All chapter and section references are to the United States Bankruptcy Code, 11 U.S.C. §§101-1532, unless otherwise noted.

CREDITOR NADLAN GROUP LLC'S MOTION
FOR RELIEF FROM STAY – 1

to prevent any further bankruptcy filings from interfering with Nadlan's enforcement of its interest in the Woodinville Property under applicable non-bankruptcy law. Finally, Nadlan seeks relief from the Stay of Order provided by Fed. R. Bankr. P. 4001(a)(4).

This Motion is supported by the Declarations of Conner Morgan and Travis Escame filed at *Dkt. 41* and *Dkt. 42*, respectively. It is also supported by the Supplemental Declaration of Conner Morgan and attached exhibit ("**Supplemental Decl.**") being filed concurrently with this Motion.

## II. FACTUAL SUMMARY

Nadlan incorporates by reference the facts stated in its Objection to Motion to Extend the Automatic Stay Under § 362(c)(3). *Dkt. 27* at Pages 2-6. Nadlan supplements the facts as follows.

On May 11, 1998, Debtor married her non-filing spouse: Daniel Suciu ("**Daniel**").[2] *Dkt. 41-2* at Page 64. To date, Debtor is still legally married to Daniel. *Id.* at Pages 10, 64.

On July 14, 2004, Debtor and Daniel (collectively, "**Suciu Debtors**") purchased the Woodinville Property and became its owners as husband and wife. *Dkt. 41-3*.

In July and August of 2020, the Suciu Debtors (and their entire family) moved out of the Woodinville Property and into the real property commonly known as 36058 21st Ln S., Federal Way, WA 98003 (the "**Federal Way Property**"). *Dkt. 41-2* at Pages 46-47.

After this move in July/August 2020, the Woodinville Property's only use was as an adult family home operating under the name of Lake Leota Senior Care ("**Lake Leota**"). *Id.* at Pages 8-11. Debtor is Lake Leota's sole member, governor, and owner. *Id.*; *see also*, *Dkt. 41-4*. From July/August 2020, and to date, the Woodinville Property is the one and only location where Lake Leota operates. *Dkt. 41-2* at Pages 8-11.

---

[2] Because the Debtor and Daniel share a last name, first names are used; no disrespect is intended.

FOR RELIEF FROM STAY – 2

*SCHWEET LINDE & ROSENBLUM, PLLC*
5601 6TH AVE S., SUITE 258
P.O. BOX 80646
SEATTLE, WA 98108
P (206) 275-1010 F (206) 381-0101

On December 22, 2022, in the lawsuit Nadlan filed under King County Superior Court case number 22-2-11195-0 KNT ("**2022 Lawsuit**"), the King County Superior Court ("**State Court**") entered a $312,988.85 judgment in Nadlan's favor and against the Debtor ("**Judgment**"). *Dkt. 41-5*; *Dkt. 41-6*. Attorney James Deal ("**Mr. Deal**") represented the Debtor in the 2022 Lawsuit at the time the State Court entered the Judgment. *Id.*

On October 17, 2023, Debtor filed for divorce against Daniel under King County Superior Court cause number 23-3-05403-6 KNT ("**Divorce Case**"). *Dkt. 41-7*; *Dkt. 41-8*; *Dkt. 41-9*. To date, the Divorce Case is pending, and the State Court has not entered a divorce decree or marital dissolution order. *Id.* March 16, 2026, is the Divorce Case's earliest possible trial date. *Id.* The Suciu Debtors were married when Debtor filed this case on August 28, 2025, and they remain married as of today. *Id.*; *see also*, Dkt. 1 at Pages 18, 22, 51-55; *Dkt. 41-2* at Pages 10, 64.

Debtor has alleged that she and her two adult daughters moved from the Federal Property and into the Woodinville Property in August 2024. *Dkt. 41-2* at Pages 47-49. At the time of this alleged move, the Woodinville Property was an adult family home operated by Lake Leota. *Id.*

On September 26, 2025, this Court held a hearing on the Debtor's Motion to Extend the Automatic Stay. *Dkt. 15*; *Dkt. 35*. At that hearing, this Court ruled that:

> "The debtor's evidence falls far short of meeting this rather high burden, especially when contrasted with this being the fourth bankruptcy case filed by the debtor, or her husband, the day prior to a scheduled execution sale by Nadlan." *Dkt. 42-1* at Page 16.

> "The debtor argues that … 'the prior dismissal was solely due to chapter 13 ineligibility, not willful misconduct or lack of diligence.' The quoted statement is both inaccurate and concerning, especially since the debtor was represented by the same attorney in the prior case and this case. I was the judge in the debtor's prior case on both May 21, 2025, and June 18, 2025…" *Id.*

> "On May 21st, I found that dismissal of the prior case was proper for three independent reasons. In addition to finding the debt was over the debt limit. I also found the debtor had shown unreasonable delay that was prejudicial to creditors under section 1307(c)(1), and

CREDITOR NADLAN GROUP LLC'S MOTION
FOR RELIEF FROM STAY – 3

*SCHWEET LINDE & ROSENBLUM, PLLC*
5601 6TH AVE S., SUITE 258
P.O. BOX 80646
SEATTLE, WA 98108
P (206) 275-1010  F (206) 381-0101

the debtor did not timely commence plan payments under section 1307(c)(4) … I also found the debtor's failure to schedule Nadlan as secured cannot be considered to have been in good faith." *Id.*

"On June 18th, I found the debtor had either made representations or changed her positions … I also found that the debtor's unreasonable delay coupled with her styling, her style, of prosecuting the prior case in a manner that created further unproductive delay, and her conduct in either misrepresenting or changing positions, made successful reorganization under Chapter 11 remote. Against this backdrop, I cannot find by clear and convincing evidence that this case was filed in good faith as to Nadlan." *Id.* at Pages 16-17.

On September 30, 2025, Nadlan completed a transcribed FRBP 2004 examination of the Debtor (the "**Deposition**"). *Dkt. 41-2*. The complete transcript is in the court file. *Id.*

### III. ARGUMENT

Section 362(d) provides in pertinent part that "On request of a party in interest and after notice and a hearing, the court **shall** grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
(2) …
(3) …
(4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either—
A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or
B) multiple bankruptcy filings affecting such real property." *See*, § 362(d).

**A. Because the Debtor has filed this Chapter 11 bankruptcy case in bad faith, Nadlan is entitled to relief from the Automatic Stay "for cause" under § 362(d)(1).**

Cause for relief under § 362(d)(1) is a broad and flexible concept that allows a bankruptcy court, sitting in equity, to fashion the necessary relief to creditors in situations that are necessarily fact intensive. *In re Indian River Estates, Inc.*, 293 B.R. 429, 432-433 (Bankr. N.D.Ohio 2003). Although "cause" is not defined, the court has authority to determine whether "cause" exists on a case-by-case

CREDITOR NADLAN GROUP LLC'S MOTION
FOR RELIEF FROM STAY – 4

*SCHWEET LINDE & ROSENBLUM, PLLC*
5601 6TH AVE S., SUITE 258
P.O. BOX 80646
SEATTLE, WA 98108
P (206) 275-1010  F (206) 381-0101

basis. *In re Conejo Enterprises Inc.*, 96 F.3d 346, 352 (9th Cir. 1996). Per well-established Ninth Circuit case law, "cause" exists under § 362(d)(1) when a debtor files or prosecutes a bankruptcy case in bad faith. *In re Duvar Apt., Inc.*, 205 B.R. 196, 200 (B.A.P. 9th Cir. 1996) (citations omitted). To analyze bad faith, courts apply four factors ("collectively, the "**Leavitt Factors**") to a "totality of the circumstances test." *In re Leavitt*, 171 F.3d 1219, 1224 (9th Cir. 1999). These *Leavitt* Factors are:

1. Whether the debtor misrepresented facts in the petition and schedules, unfairly manipulated the Bankruptcy Code, or engaged in otherwise inequitable conduct;

2. Whether the debtor has a history of repeatedly filing bankruptcy cases;

3. Whether the debtor filed the instant bankruptcy case for the intention or purpose of defeating state court litigation; and

4. Whether the debtor has engaged in egregious behavior. *Id.*

Here, all four *Leavitt* Factors establish Debtor's bad faith. First, bad faith exists under *Leavitt* Factors one and four because Debtor has both misrepresented facts in her bankruptcy documents, and she has engaged in egregious behavior. For example, at the hearing this Court held on September 29, 2025, this Court found that Debtor made "inaccurate and concerning statements" when she argued that her "prior dismissal was solely due to chapter 13 ineligibility, not willful misconduct or lack of diligence." *Dkt. 42-1* at Pages 15-17. This example, while the first, is not the last. The Court continued: "I also found the debtor's failure to schedule Nadlan as secured cannot be considered to have been in good faith." *Id.* In conclusion, this Court found that Debtor had a "style of prosecuting the prior case in a manner that created further unproductive delay, and her conduct in either misrepresenting or changing positions, made successful reorganization under Chapter 11 remote." *Id.* Against this backdrop, this Court found, by clear and convincing evidence, that the Debtor did not file this case "in good faith as to Nadlan." *Id.* at Pages 16-17.

CREDITOR NADLAN GROUP LLC'S MOTION
FOR RELIEF FROM STAY – 5

*Schweet Linde & Rosenblum, PLLC*
5601 6TH AVE S., SUITE 258
P.O. BOX 80646
SEATTLE, WA 98108
P (206) 275-1010 F (206) 381-0101

Debtor's continued assertion that Lake Leota is a sole proprietorship is also evidence of bad faith under *Leavitt* Factors one and four. Debtor admitted she incorporated "Lake Leota Senior Care LLC" on January 22, 2018. *Dkt. 41-2* at Pages 8, 16-31; *see also*, *Dkt. 41-4*. Yet her sworn filings claim Lake Leota is a sole proprietorship. *Dkt. 1* at Page 4; *Dkt. 31* at Page 6. As this Court noted, Debtor "had consistently taken the position that Lake Leota [was] an LLC until it became apparent that Nadlan had a charging order against that LLC." *Dkt. 42-1* at Pages 15-17.

Debtor further misrepresented facts and behaved egregiously by executing the Washington Commercial Lease Agreement dated September 24, 2018 ("**Fraudulent Lease**"). *Supp. Decl. Exh. A*. Even though it is dated September 24, 2018, Debtor did not execute the Fraudulent Lease until October 4, 2023. *Id.* This date is not a coincidence. The Woodinville Property was scheduled for an execution sale on October 7, 2023, but this sale was canceled because Daniel filed bankruptcy on October 6, 2023, a day prior to this sale date. *Dkt. 27* at Page 3. When asked, Debtor stated:

**Nadlan Atty:** "What is this document?"

**Debtor:** "It was, it was a lease agreement between Lake Leota and Daniel."

**Nadlan Atty:** "And are you also a party to this lease?"

**Debtor:** "Yes."

**Nadlan Atty:** "And is Lake Leota Senior Care LLC a party to this lease?"

**Debtor:** "Yes."

**Nadlan Atty:** "Did you sign this lease on Lake Leota Senior Care's behalf?"

**Debtor:** "I did."

**Nadlan Atty:** "And you also signed this in your individual capacity?"

**Debtor:** "Yes."

CREDITOR NADLAN GROUP LLC'S MOTION
FOR RELIEF FROM STAY – 6

*SCHWEET LINDE & ROSENBLUM, PLLC*
5601 6TH AVE S., SUITE 258
P.O. BOX 80646
SEATTLE, WA 98108
P (206) 275-1010  F (206) 381-0101

| | | |
|---|---|---|
| **Nadlan Atty:** | "Is this lease between you and Daniel, on the one hand, and Lake Leota Senior Care LLC, on the other hand, still in effect as of today's date?" | |
| **Debtor:** | "No." | |
| **Nadlan Atty:** | "When did this lease terminate?" | |
| **Debtor:** | "It never began. It was just signed because we -- the attorney asked us to do this." | |
| **Nadlan Atty:** | "So this lease -- so there was never a lease between you and Daniel, on the one hand, and Lake Leota Senior Care LLC, on the other hand? | |
| **Debtor:** | "It was never -- the attorney asked us to do this and get it notarized, and that's what we did. There was never any payments made or it enforced, no. It was just the attorney said to do it, and I did it, because I don't know attorneys know better than I do." *Dkt. 41-2* at Pages 17-21. | |

These examples are only the tip of a vast iceberg. But-for this Motion's page limits, Nadlan would have provided this Court with a near infinite volume of examples showing bad faith on the the Suciu Debtors' part. *See, e.g.*, *Dkts. 27* and *40*; *Cristina's 1st BK* at *Dkts. 12*, *37*, *54*, *58*, *61*, and *68*; *Daniel's 2nd BK* at *Dkts. 52*, *96*, and *135*; *Daniel's 1st BK* at *Dkts. 36*, *41*, *57*, and *76*.

Under the second *Leavitt* factor, bad faith exists because the Suciu Debtors have stymied Nadlan's Judgment enforcement in 7 different cases spread across 3 separate courts as follows:

1. <u>King County Superior Court Case No. 22-2-11195-0 KNT</u> ("**2022 Lawsuit**");

2. <u>Chapter 13 Bankruptcy Case No. 23-11896-TWD</u> ("**Daniel's 1st BK**");

3. <u>Chapter 11 Bankruptcy Case No. 24-10877-MLB/CMA</u> ("**Daniel's 2nd BK**");

4. <u>Bankruptcy Appellate Panel Case No. WW-24-1151</u> ("**Homestead Appeal**");

5. <u>Chapter 13 Bankruptcy Case No. 25-10742-TWD</u> ("**Cristina's 1st BK**");

6. <u>Chapter 11 Bankruptcy Case No. 25-12395-TWD</u> ("**Cristina's 2nd BK**"); and

7. <u>King County Superior Court Case No. 25-2-18138-3 SEA</u> ("**2025 Lawsuit**").

CREDITOR NADLAN GROUP LLC'S MOTION
FOR RELIEF FROM STAY – 7

*SCHWEET LINDE & ROSENBLUM, PLLC*
5601 6TH AVE S., SUITE 258
P.O. BOX 80646
SEATTLE, WA 98108
P (206) 275-1010 F (206) 381-0101

As this Court knows all too well, the Suciu Debtors have repeatedly filed bankruptcy. Yet, to date, none of their cases ended with discharge. Nor have they ever confirmed a reorganization plan. Instead, all their bankruptcy cases end in the exact same and identical manner: termination via dismissal without discharge or reorganization. And this case will likely suffer the same fate.

Finally, Debtor admitted to the third *Leavitt* Factor in her Deposition. *Dkt. 41-2* at Pages 51-52. Removing all doubt, Debtor testified under oath as follows:

**Nadlan Atty:** "Is it true that Nadlan had an execution sale of the Woodinville house scheduled for the day after … you filed this bankruptcy case?"

**Debtor:** "Yes, they did."

**Nadlan Atty:** "When you filed your Chapter 13 case in March of 2025, did you file that case one day before Nadlan's execution sale of the Woodinville house?"

**Debtor:** "Yes."

**Nadlan Atty:** "Was your primary motivation for filing both cases to stop Nadlan's execution sale of the Woodinville house?"

**Debtor:** "Yes, because that's where I live."

*Id.* In other words, Debtor's primary drive, intention, and motivation for filing this case was to stop Nadlan from proceeding with the Woodinville Property's execution sale. *Id.*

In sum, Debtor's bad faith started after Nadlan began enforcing its Judgment. Nothing has changed in the past 3 years that warrants continuation of this madness. Because bad faith is present, cause exists under § 362(d)(1). Therefore, this Motion should be granted.

**B. Because the Debtor has filed this Chapter 11 bankruptcy case to delay and hinder the execution sale of the Woodinville Property securing Nadlan's Judgment, Nadlan is entitled to relief from the Automatic Stay under § 362(d)(4).**

A creditor is entitled to relief from the Automatic Stay when: (i) the Automatic Stay implicates a real property that secures the creditor's claim; and (ii) the court finds that the debtor has filed

CREDITOR NADLAN GROUP LLC'S MOTION
FOR RELIEF FROM STAY – 8

*SCHWEET LINDE & ROSENBLUM, PLLC*
5601 6TH AVE S., SUITE 258
P.O. BOX 80646
SEATTLE, WA 98108
P (206) 275-1010  F (206) 381-0101

multiple bankruptcy cases as part of a "scheme" to delay, hinder, or defraud creditors. *See*, § 362(d)(4). Because both elements are present, this Motion should be granted. *Id.*

### A. § 362(d)(4)'s first element exists because the Automatic Stay implicates the Woodinville Property and the Woodinville Property secures Nadlan's Judgment.

Nadlan can establish § 362(d)(4)'s first element because the Automatic Stay, as currently constituted, implicates the Woodinville Property. Although Nadlan has a duly valid and recorded Judgment lien on the Woodinville Property, the Automatic Stay prohibits Nadlan from going any further. Unless it obtains relief from the Automatic Stay, Nadlan cannot foreclose its Judgment lien by having the Woodinville Property sold at an execution sale. This predicament is never-ending since Nadlan has tried 4 different times over the past 3 years to foreclose its Judgment lien. *See*, Dkt. 27 at Page 3. Yet each time, Nadlan failed. *Id.* Not because of Nadlan's shortcomings. *Id.* But because one of the Suciu Debtors filed a bankruptcy case exactly 1 day before Nadlan could proceed with the Woodinville Property's execution sale. *Id.*

### B. § 362(d)(4)'s second element exists because Debtor filed multiple bankruptcy cases as part of a "scheme" to delay and hinder Nadlan's Judgment enforcement efforts.

A creditor requesting relief under § 362(d)(4) may establish the second element (*i.e.*, the debtor's delaying, hindering, or defrauding of creditors) by showing how the debtor either: (i) transferred the real property without approval of the court or the secured creditor; or (ii) filed multiple bankruptcy cases affecting the same, subject real property. *See*, § 362(d)(4). Proof that the debtor filed bankruptcy to either *delay* creditors or *hinder* creditors is sufficient under § 362(d)(4)'s second element because the Bankruptcy Code uses the disjunctive word "or." *Id.* Although further proof showing how the debtor defrauded the creditor is helpful, such evidence is not required. *Id.* And since the Bankruptcy Code again uses the disjunctive word "or" in §§ 362(d)(4)(A) and (d)(4)(B), the creditor is not required to establish that the debtor transferred the real property. *Id.*

CREDITOR NADLAN GROUP LLC'S MOTION
FOR RELIEF FROM STAY – 9

*SCHWEET LINDE & ROSENBLUM, PLLC*
5601 6TH AVE S., SUITE 258
P.O. BOX 80646
SEATTLE, WA 98108
P (206) 275-1010 F (206) 381-0101

Moreover, a "scheme" for the purposes of §362(d)(4) "is an intentional artful plot or plan to delay hinder or defraud creditors." *In re Duncan & Forbes Dev., Inc.*, 368 B.R. 27, 32 (Bankr. C.D.Cal. 2006). The party asserting the presence of ". . . .a scheme must present evidence sufficient for the trier of fact to infer the existence and content of the scheme." *Id.* It is not necessary that only the debtor created the scheme, or that the debtor itself carried the scheme out. *Id.* The scheme only needs to be designed to hinder or delay, as those terms are conjoined by the disjunctive "or" in §362(d)(4). *Id.* at 34. Hinderance or delay must be predicated on "malice, fraud covin, collusion, or guile." *Id.* (internal quotations omitted).

Here, Debtor has filed multiple bankruptcy cases as part of a multi-year scheme thwarting Nadlan's Judgment enforcement efforts. Her scheme involves both delay and hinderance.

1. <u>Debtor unlawfully *delayed* Nadlan's post-Judgment enforcement efforts.</u>

It cannot be disputed that Debtor filed this case to *delay* Nadlan's post-Judgment enforcement efforts. She filed on August 28, 2025, exactly 1 day before the Woodinville Property's August 29, 2025, execution sale. *Dkt. 27* at Page 3. To remove any doubt, this Court only needs to review the transcript of the Debtor's Deposition where she freely admits, under oath, and in the presence of her bankruptcy attorney, that she filed this bankruptcy case to block Nadlan's Judgment execution efforts. *Dkt. 41-2* at Pages 51-52. And this case is only one of four (4) others filed by one of the Suciu Debtors on the eve of an execution sale of the Woodinville Property.

2. <u>Debtor unlawfully *hindered* Nadlan's post-Judgment enforcement efforts.</u>

Unlike the *Duncan & Forbes* case, malice, fraud, covin, collusion and/guile are all present in this case as part and parcel of the Debtor's scheme to *hinder* Nadlan's Judgment enforcement efforts. The record before this Court reveals how the Suciu Debtors have acted in concert in various venues to hinder enforcement of the Judgment. These efforts include: (i) Debtor's execution of

CREDITOR NADLAN GROUP LLC'S MOTION
FOR RELIEF FROM STAY – 10

*SCHWEET LINDE & ROSENBLUM, PLLC*
5601 6TH AVE S., SUITE 258
P.O. BOX 80646
SEATTLE, WA 98108
P (206) 275-1010  F (206) 381-0101

homestead declaration documents which a court of competent jurisdiction rejected, (ii) Debtor's election to file a Chapter 13 case despite the fact that Daniel's identical Chapter 13 case was dismissed as the marital community debts exceeded the applicable debt limits of §109(e), (iii) Debtor's execution of the Fraudulent Lease, (iv) Debtor's denial of responsibility under the Fraudulent Lease upon being confronted with it during her Deposition, (v) Daniel's email to Debtor's family law attorney stating "I think my interests and Cristinas [sic] interests are aligned in Fighting Creditors," and (vi) Debtor's under oath admission that this bankruptcy case (like the previous 3 cases discussed *ad nauseam*) was filed to stop Nadlan's execution sale of the Woodinville Property.

While the particulars of the Suciu Debtors' scheme evolved over the course of the various years and actions detailed above, their ultimate goal has remained consistent: preventing Nadlan from collecting anything on the Judgment. In its latest iteration, the Suciu Debtors are now trying to augment their exemption rights by using the pending Divorce Case to grant themselves 2 separate homestead exemptions in a bad faith effort to protect both the Woodinville Property and the Federal Way Property. To realize this goal, Debtor appears to be utilizing this Chapter 11 bankruptcy case to stall for enough time to complete the Divorce Case while the Automatic Stay prevents Nadlan (and Debtor's other creditors) from enforcing their creditors' rights before the termination of Suciu Debtor's marital community.[3]

The arguments the Suciu Debtors have advanced, both in this case and in their since-dismissed cases, make one thing clear: they will stop at nothing. Unless this Court intervenes, the Suciu Debtors will continue, at all costs, to delay, hinder, thwart, and otherwise prevent Nadlan

---

[3] To date, neither of the Suciu Debtors have sought relief from the Automatic Stay to allow the pending Divorce Case to proceed. This omission constitutes further evidence of the prejudicial delay this Court has already found exists.

CREDITOR NADLAN GROUP LLC'S MOTION
FOR RELIEF FROM STAY – 11

*SCHWEET LINDE & ROSENBLUM, PLLC*
5601 6TH AVE S., SUITE 258
P.O. BOX 80646
SEATTLE, WA 98108
P (206) 275-1010 F (206) 381-0101

from ever enforcing its Judgment. To finally allow Nadlan to pursue its lawful post-Judgment remedies, this Motion must be granted. Accordingly, and to curtail the Suciu Debtors from repeating their bad acts in a fifth (5th) bankruptcy case, this Court must enter an order per § 362(d)(4) granting and providing Nadlan relief from the Automatic Stay on an *in rem* basis as to the Woodinville Property.

### C. This Court should waive the Stay of Order because it would be inequitable to cause Nadlan to incur further delay due to the Debtor's bad faith filing and scheme.

In addition to seeking relief from the Automatic Stay, Nadlan respectfully moves this Court for an order waiving the Stay of Order per Fed. R. Bankr. P. 4001(a)(4). Relief from the Stay of Order is necessary to allow Nadlan to proceed with an execution sale of the Woodinville Property without any additional delay. Nadlan has been working in good faith for over 3 years to collect and enforce its Judgment. It should not have to wait any longer. This Motion should be granted, and Nadlan should be provided with relief from both the Automatic Stay and the Stay of Order.

### IV. CONCLUSION

For the reasons outlined above, Nadlan respectfully requests this Court grant this Motion, and provide Nadlan with relief from both the Automatic Stay and the Stay of Order. Nadlan further requests that this relief be provided on an *in rem* basis as to the Woodinville Property. A proposed order is attached.

DATED: October 31, 2025.

**SCHWEET LINDE & ROSENBLUM, PLLC**

*/s/ Conner Morgan /*
Michael M. Sperry, WSBA #43760
Conner Morgan, WSBA #55697
*Attorneys for Nadlan Group LLC*

CREDITOR NADLAN GROUP LLC'S MOTION
FOR RELIEF FROM STAY – 12

*SCHWEET LINDE & ROSENBLUM, PLLC*
5601 6TH AVE S., SUITE 258
P.O. BOX 80646
SEATTLE, WA 98108
P (206) 275-1010 F (206) 381-0101