**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF WASHINGTON AT SEATTLE**

| | | |
|---|---|---|
| In Re: | ) | **CASE NO. 25-10742-TWD** |
| | ) | |
| CRISTINA NICOLETA SUCIU, | ) | RESPONSE OF DEBTOR |
| | ) | CRISTINA SUCIU |
| Debtor. | ) | TO OBJECTION TO |
| | ) | HOMESTEAD EXEMPTION |

**I. Introduction and Foundational Legal Principles**

**A. Statement of Relief Requested and Overarching Legal Thesis**

The Debtor, Cristina Nicoleta Suciu, submits this Comprehensive Reply Memorandum in opposition to the Objection to Homestead Exemption (dkt. 40) filed by creditor Nadlan Group LLC ("Nadlan"). Nadlan challenges the Debtor's statutory homestead exemption of $968,300.00 in the Woodinville Property (16028 NE 184th Place, Woodinville, Washington).

The core legal contention before the Court revolves solely around the Debtor's entitlement to the exemption, a right derived exclusively from her physical residency and strict compliance with Washington's protective homestead regime set forth in RCW 6.13. The central thesis of this reply is that Nadlan's Objection relies upon critical legal misinterpretations concerning the ability of estranged spouses to maintain separate homesteads, attempts to impose obsolete notions of marital property rights (and outdated ideas of husband as head and master), and fails entirely to refute the unequivocal fact of the Debtor's continuous, good-faith residency at the Woodinville Property for over one year prior to the filing of the Chapter 11 bankruptcy petition.

RESPONSE OF DEBTOR CRISTINA SUCIU TO
OBJECTION TO HOMESTEAD EXEMPTION -- 1

**Lake Hills Legal Services PC**
**15600 N.E. 8th St., # B1-358**
**Bellevue, Washington  98008**
**Telephone:  (425) 829-5305**
**E-mail:  rp98007@gmail.com**

The evidence presented by the Debtor establishes that the Woodinville residence is the dedicated and continuous home for herself and her two severely disabled adult daughters, Natalia and Olivia. Since the Debtor's claim satisfies every element mandated by Washington law, and the issue of property valuation is separate from the question of entitlement, Nadlan's Objection must be overruled, and the Debtor's homestead exemption must be sustained in its entirety.

**B. The Constitutional Mandate and Policy of Liberal Construction**

Washington State's statutory homestead framework is not merely a technical loophole; it is fundamentally rooted in the state's constitutional and public policy commitment to protecting the family unit. Article XIX, Section 1 of the Washington Constitution mandates that the legislature "shall protect by law from forced sale a certain portion of the homestead... of all heads of families". This constitutional provision reflects a profound public interest in ensuring the stability and shelter of citizens.

The judicial interpretation of this mandate requires courts to construe homestead laws liberally. "The homestead act 'implements the policy that <u>each citizen have a home where [the] family may be sheltered</u> and live beyond the reach of financial misfortune'" (*In re Dependency of Schermer*, 161 Wn.2d 927, 953, 169 P.3d 452, 465 (2007)). The Debtor's circumstances place her claim at the apex of this protective policy. Ms. Suciu resides with her two adult twin daughters, Natalia and Olivia, who require perpetual, lifelong care due to severe intellectual disabilities. This functional reality places Ms. Suciu squarely within the category of a functional head of family, dedicated to providing continuous care for highly vulnerable dependents in a specialized, stable living environment adjacent to their necessary educational program.

The consequence of denying the homestead exemption would be catastrophic and would directly violate this constitutional policy by enabling a forced sale that would strip the Debtor and her dependents of their current home and stability, inflicting profound disruption to their access to critical educational and life support services. Therefore, the resolution of this matter must align with the overwhelming protective policy established by the Washington Constitution, homestead exemption statutes, and case law interpreting these stat.

RESPONSE OF DEBTOR CRISTINA SUCIU TO
OBJECTION TO HOMESTEAD EXEMPTION -- 2

**Lake Hills Legal Services PC**
**15600 N.E. 8th St., # B1-358**
**Bellevue, Washington 98008**
**Telephone: (425) 829-5305**
**E-mail: rp98007@gmail.com**

**C. The Bankruptcy "Snapshot Rule" and Fixed Entitlement**

The timing of the Debtor's exemption rights is governed strictly by the federal "snapshot rule" codified in 11 U.S.C. § 522(b). This rule fixes the Debtor's entitlement to the exemption based exclusively on the verifiable facts and applicable state law existing on the date of the bankruptcy petition filing, which occurred on August 28, 2025.

This legal principle means that all prior circumstances, including historical uses of the property, prior non-occupancy rulings, or events predating the petition date, are irrelevant to the current determination, provided that the current facts meet the statutory criteria. The critical fact is that the Debtor established continuous physical residency in the Woodinville Property in late August 2024, approximately one full year prior to the Chapter 11 filing.

Since entitlement hinges exclusively on verifiable residency as of August 28, 2025, and Ms. Suciu resided there continuously on that date, the statutory conditions for automatic homestead protection were met. The Ninth Circuit consistently holds that the facts and law are locked in as of the petition date (*In re Wilson*, 909 F.3d 306, 312 (9th Cir. 2018); *Barclay v. Boskoski*, 52 F.4th 1172 (9th Cir. 2022)). This temporal fixity ensures that the Debtor's rights are not subject to shifting legal interpretations based on prior rulings made when the facts of residency were materially different.

**II. Factual Basis: Triggering the Automatic Homestead (RCW 6.13.040)**

The Debtor's homestead claim is established by the statutory mandate for automatic protection derived from actual occupancy, rendering redundant any discussion of formal declaration or abandonment requirements.

**A. Establishment of Continuous, Pre-Petition Residency**

The Debtor's claim is founded entirely upon the verifiable and continuous physical residency established well before the petition date. The Debtor and her two disabled daughters completed their move back to the Woodinville Property on August 24–25, 2024. This established a continuous physical presence for a full year before the Chapter 11 filing.

RESPONSE OF DEBTOR CRISTINA SUCIU TO OBJECTION TO HOMESTEAD EXEMPTION -- 3

**Lake Hills Legal Services PC**
**15600 N.E. 8th St., # B1-358**
**Bellevue, Washington 98008**
**Telephone: (425) 829-5305**
**E-mail: rp98007@gmail.com**

This lengthy, continuous occupancy fulfills the sole statutory requirement for automatic homestead establishment under RCW 6.13.040(1), which protects property the owner "occupie[s] as a principal residence". The residency is comprehensively documented through external evidence, including the Debtor's actual residency, voter registration, driver's license, mail-in ballots, and the official enrollment (and daily bus transportation) of her daughters at the Northshore SD Adult Transition Program Pathways. The daughters' educational needs—attending a highly specialized program for severe intellectual disabilities—provide an objective, non-financial reason for establishing residency in the Northshore School District attendance area. This extensive body of evidence conclusively proves the requisite residency for automatic homestead protection, which is legally sufficient for claiming the statutory amount of $968,300.00, calculated based on the 2025 King County median sale price.

**B. Refutation of the Abandonment Requirement (RCW 6.13.050 and 6.13.040(2))**

Nadlan incorrectly argues that the Debtor was required to file documents "abandoning" the Federal Way property to claim the Woodinville property as a homestead. This assertion misapplies the Washington homestead statutes governing both automatic protection and abandonment procedures.

RCW 6.13.040(1) grants an automatic homestead exemption solely for property the owner "uses as a residence". When an owner physically occupies a property, the exemption is established by automatic operation of law. The specific requirement to file a declaration of abandonment (of the current residential property), found in RCW 6.13.050 and RCW 6.13.040(2), applies only when claiming a new homestead on **unoccupied** land, or when owner is absent from a claimed homestead for over six months and has no other principal residence.

Since Ms. Suciu currently occupies the Woodinville Property as her principal residence, the need for a declaration of abandonment regarding the previous Federal Way residence is legally moot concerning the validity of the current claim. The statutory focus shifts entirely to the current physical occupancy of the claimed residence, not the paperwork related to a prior residence. This legal distinction invalidates Nadlan's claim that the Debtor was required to file

RESPONSE OF DEBTOR CRISTINA SUCIU TO OBJECTION TO HOMESTEAD EXEMPTION -- 4

Lake Hills Legal Services PC
15600 N.E. 8th St., # B1-358
Bellevue, Washington 98008
Telephone: (425) 829-5305
E-mail: rp98007@gmail.com

non-abandonment or abandonment documents for the Woodinville or Federal Way properties, respectively, for the current claim to be valid.

### C. Prior Rulings are Not Res Judicata (Change in Material Facts)

Nadlan attempts to use prior adverse rulings related to the Woodinville Property to undermine the Debtor's claim, citing prior orders from state court and bankruptcy court (when none of the Suciu family lived there). This argument fails due to the paramount authority of the Bankruptcy "Snapshot Rule" combined with the material change in underlying facts.

The previous rulings, including the August 2023 state court order and Judge Alston's August 16, 2024 order, denied homestead claims because they related specifically to **Daniel Suciu's** attempts to claim the Woodinville Property when he, or the family, did not reside there. In fact, Judge Alston's oral ruling (see dkt. 50-2, transcript) explicitly stated that the prior state court ruling was *not* res judicata because facts could theoretically change and Mr. Suciu *could* move into the property and prove those new facts. Daniel Suciu's claim was denied because he failed to present timely evidence that anyone resided there on his April 11, 2024, petition date.

Crucially, Ms. Suciu's continuous residency began in late August 2024, materially changing the facts upon which the current entitlement must be judged. Under established bankruptcy law, the Debtor's current entitlement, derived from verified continuous occupancy, supersedes and renders irrelevant any prior judicial findings predicated upon the obsolete factual status of the property when no family members resided there from 2020 to 2024 prior to her move. The denial of a homestead claim based on one spouse's lack of occupancy does not preclude the other spouse from establishing a valid claim based on new, verifiable residency facts as of the filing date (*In re Mayer*, 167 B.R. 186, 188 (9th Cir. BAP 1994)). Furthermore, Daniel Suciu's history of repeat filings or prior misconduct cannot be legally attributed to Cristina to deny her independent statutory right, which is based purely on her residency.

### III. Legal Dissection of the Single Marital Homestead Fallacy

Nadlan's assertion that the Debtor and her estranged husband are restricted to a single homestead, which must necessarily be the Federal Way Property where Daniel Suciu resides,

RESPONSE OF DEBTOR CRISTINA SUCIU TO
OBJECTION TO HOMESTEAD EXEMPTION -- 5

**Lake Hills Legal Services PC**
**15600 N.E. 8th St., # B1-358**
**Bellevue, Washington 98008**
**Telephone: (425) 829-5305**
**E-mail: rp98007@gmail.com**

constitutes Nadlan's most critical legal error. This argument is predicated on a restrictive and inaccurate reading of RCW 6.13.020 and ignores modern principles of Washington family law concerning spousal separation.

### A. RCW 6.13.020 Explicitly Permits Dual Separate Homesteads

The specific text of RCW 6.13.020 expressly undermines Nadlan's claim of a unified, single marital homestead mandate. The statute clearly states:

*"The homestead may consist of the community or jointly owned property... or the separate property of either spouse".*

The operative legal mechanism governing the Debtor's right is her individual status as an owner residing in the property, regardless of the estranged marriage. The law establishes the right to a homestead based solely on where the owner resides, not based on the concept of marital cohabitation. The law only prohibits the two spouses from claiming the **"same premises"** separately for the purpose of impermissibly doubling the exemption amount.

Since Ms. Suciu occupies the Woodinville Property and Daniel Suciu occupies the entirely separate Federal Way Property, the narrow statutory prohibition on duplication is inapplicable. The Washington statutory scheme explicitly contemplates that different spouses may assert homestead rights in different properties, even if they remain legally married, provided those properties are physically distinct residences. Nadlan's reliance arguing obsolete principles that favored the husband's residence as the single community homestead has been rejected decades ago by modern Washington family law principles recognizing equal spousal rights.

### B. Spousal Separation and Independent Residential Rights

The statutory validity of Cristina's independent homestead claim is significantly reinforced by the legal status of her separation from Daniel Suciu. Ms. Suciu filed for dissolution on October 17, 2023, formalizing the estranged nature of the marriage.

Under RCW 26.16.140, when spouses are "living separate and apart," their respective earnings and accumulations become separate property. This statutory conversion of assets to separate property status, combined with the express language of RCW 6.13.020 allowing

RESPONSE OF DEBTOR CRISTINA SUCIU TO
OBJECTION TO HOMESTEAD EXEMPTION -- 6

**Lake Hills Legal Services PC**
**15600 N.E. 8th St., # B1-358**
**Bellevue, Washington 98008**
**Telephone: (425) 829-5305**
**E-mail: rp98007@gmail.com**

homesteads in the *separate property of either spouse*, fully validates Cristina's independent claim regardless of Daniel's residence or claim in Federal Way. This means that functionally, the community is defunct regarding residency choices and acquisition of separate earnings.

Furthermore, Washington divorce law acknowledges and reinforces this right to separate occupancy. RCW 26.09.080 permits state courts to award exclusive possession of a residence to one spouse during dissolution proceedings. While formal temporary orders have not been sought due to the bankruptcy stay, the Sucius' voluntary physical separation since August 2024—with Daniel residing in Federal Way and Cristina in Woodinville—achieves a recognized division that RCW 6.13.020 (and RCW 26.09.080 and other family laws) is designed to accommodate.

Nadlan's argument that Cristina must claim the Federal Way property because it is potentially the lower-valued asset constitutes an attempt to compel the Debtor's choice of shelter purely for the benefit of asset maximization and enhanced creditor recovery on the Woodinville property. The law, however, vests the right to choose the residence designated as a homestead solely with the Debtor residing in the property, not the creditor seeking a maximal financial return. Ms. Suciu resides in Woodinville, providing perpetual care for her vulnerable dependents, a fact that satisfies the constitutional mandate and renders Daniel's potential claim in the separate Federal Way property legally irrelevant to her established right in Woodinville.

### IV. Refuting Claims of Fraud, Bad Faith, and Abuse of Process

Nadlan attempts to characterize the Debtor's claim as lacking good faith, primarily by focusing on the timing of the Chapter 11 filing to halt an execution sale and by attributing Daniel Suciu's past misconduct and litigation history to Cristina. This argument misapprehends the high legal standard required to defeat a homestead claim on grounds of statutory bad faith.

### A. Statutory Good Faith: Residency Trumps Creditor Defeat Motive

Washington law mandates that a debtor assert their homestead exemption "in good faith", meaning an "honest intention or purpose of occupying the land as a home" and prohibits the use of the exemption as a "mere subterfuge with no honest intention" of residence (*Schoenheider v. Tuengel*, 96 Wash. 103, 106, 164 P. 748, 749 (1917).)

RESPONSE OF DEBTOR CRISTINA SUCIU TO
OBJECTION TO HOMESTEAD EXEMPTION -- 7

Crucially, Washington courts have long held that the *motive* for claiming the homestead—even if solely to protect the property from execution—is permissible, provided the necessary *occupancy* is established. As the Washington Supreme Court ruled in *Clark v. Davis*, 37 Wn.2d 850, 852, 226 P.2d 904, 905 (1951), "the law does not make the right to claim the exemption dependent upon the good or bad faith of the claimant in incurring the debt, or upon the purpose for which the homestead is claimed." The singular test is occupancy. This view was reiterated in *Webster v. Rodrick*, which affirmed that the homestead must be used as a "shield to protect the homesteader and his dependents in the enjoyment of a domicile" (*Webster v. Rodrick*, 64 Wn.2d 814, 816, 394 P.2d 689, 691 (1964)).

The undisputed factual record overwhelmingly supports the Debtor's honesty. Her verifiable residency, established in late August 2024, occurred **over a year** prior to the Chapter 11 filing date of August 28, 2025. This long-term, continuous occupancy definitively refutes any suggestion that the exemption was fraudulently created solely on the "eve of bankruptcy".

Nadlan's attempt to liken this claim to the facts of *Schoenheider* is misplaced. *Schoenheider v. Tuengel* involved a claimant who asserted an exemption over unimproved land containing minimal dwelling (shack and not even an outhouse), failing to demonstrate a genuine, permanent intent to make it a home. Here, the Debtor has established an actual, continuous, year-long residence in a permanent dwelling, driven by the objective need to provide stability and specialized care for her severely disabled daughters near their required educational program. The Debtor's year-long physical occupancy, independent of her husband's prior filings and debt, establishes the requisite statutory good faith necessary to claim the exemption under RCW 6.13.

Although the Debtor admitted the filing was strategically timed to halt a forced execution sale, utilizing this legal protection is a legitimate objective, not evidence that her year-long physical occupancy was dishonest or temporary. Halting a forced execution sale to utilize the protections granted by 11 U.S.C. § 522(b) and RCW 6.13.070 (which guarantees the exempt amount upon sale proceeds) is a legitimate legal objective, and not the type of statutory bad faith (lack of factual residency) required to defeat the homestead exemption claim.

RESPONSE OF DEBTOR CRISTINA SUCIU TO OBJECTION TO HOMESTEAD EXEMPTION -- 8

**B. Dismissing Nadlan's Judicial Estoppel Argument**

Nadlan attempts to use Cristina's 2025 legal malpractice action against the estate of her prior attorney, James Deal, as evidence of bad faith, arguing that pursuing the claim implies she acknowledges liability in the underlying 2022 judgment. This argument fails as a matter of law.

The doctrine of judicial estoppel is an equitable tool intended to protect the integrity of the judicial process by preventing a party from asserting a position that is "clearly inconsistent" with one successfully and unequivocally asserted by that party in a prior proceeding (*New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)).

In this instance, the Debtor's position in the malpractice suit—that her attorney failed to properly defend her interests and protect her share of community property assets from the 2022 judgment—is not inconsistent with claiming a statutory homestead exemption in her current residence. The malpractice action seeks redress for an attorney's alleged failure to mitigate financial harm; the homestead claim is an assertion of a fundamental statutory right to shelter. Furthermore, the conditions for judicial estoppel are not met because the Debtor has never successfully and unequivocally asserted personal liability for the 2022 judgment in a prior proceeding. The underlying judgment names only Daniel Suciu and Friendly Old Folks Home LLC. The Debtor maintains her position under RCW 26.16.190 that she is not personally liable for Daniel's torts or contracts. The malpractice suit simply acknowledges the damaging *effect* of the judgment on community property, not any personal liability for the underlying debt.

**C. The Debtor's Lack of Personal Liability and Nadlan's Equitable Position**

The record, supported by declarations and judgment documents, confirms that Nadlan's judgment names only Daniel Suciu and Friendly Old Folks Home LLC as judgment debtors. Cristina Suciu was never named as a Defendant, nor was she served with summons naming her as a defendant and directing her to defend the suit.

Under RCW 26.16.190, the separate property of a non-acting spouse generally remains shielded from the other spouse's torts or contracts. Consequently, Nadlan's claim is enforceable only against non-exempt community property equity in the Woodinville Property. The egregious

RESPONSE OF DEBTOR CRISTINA SUCIU TO OBJECTION TO HOMESTEAD EXEMPTION -- 9

Lake Hills Legal Services PC
15600 N.E. 8th St., # B1-358
Bellevue, Washington 98008
Telephone: (425) 829-5305
E-mail: rp98007@gmail.com

pattern of misrepresentation by Nadlan's attorneys—falsely swearing in affidavits and praecipes that Cristina Suciu was a "Defendant/Judgment Debtor" to procure writs of execution against her home—demonstrates a troubling attempt to inflate the judgment's reach and severely compromises Nadlan's equitable standing before the Court. This misconduct undermines Nadlan's ability to credibly challenge the Debtor's constitutionally protected right to shelter.

### V. Deconstruction of Nadlan's Valuation and Equity Challenge

Nadlan's Objection heavily references an estimated $3.4 million valuation for the Woodinville Property, deploying this figure as a pretextual argument to suggest the Debtor is shielding vast non-exempt wealth and acting in bad faith. This reliance on valuation is legally unsound for determining homestead entitlement and rests on a fundamental fallacy regarding the property's value composition.

The threshold determination for the Court is the Debtor's *entitlement* to the exemption under RCW 6.13.040(1), which is based solely on occupancy. The property's value only dictates the mechanism for creditor recovery under RCW 6.13.070, which mandates that if the property is sold, the owner receives the first $968,300 in proceeds.

The Debtor's objective is simply to secure her statutory right to this exempt amount, whether through an orderly sale under Chapter 11 or protection against a Sheriff's sale. This objective is explicitly permitted and guaranteed by Washington law. Therefore, Nadlan's valuation argument is a distraction from the core statutory question of residency.

### VI. Irrelevance of Ancillary Legal and Administrative Claims

Nadlan attempts to complicate the core statutory exemption issue by injecting various collateral matters related to the dissolution case, professional approval, and the Debtor's litigation history. These issues are tangential, strictly administrative, or legally unfounded, bearing no weight on the determination of homestead entitlement.

#### A. Dissolution Case Delay is Required by Federal Law

Nadlan criticizes the slow progress of the Debtor's dissolution case, suggesting improper delay tactics, noting the trial continuance to March 2026. This criticism fundamentally

RESPONSE OF DEBTOR CRISTINA SUCIU TO
OBJECTION TO HOMESTEAD EXEMPTION -- 10

Lake Hills Legal Services PC
15600 N.E. 8th St., # B1-358
Bellevue, Washington 98008
Telephone: (425) 829-5305
E-mail: rp98007@gmail.com

misrepresents the legal consequences of the Chapter 11 filing.

Bankruptcy filings invoked the powerful protection of the automatic stay (11 U.S.C. § 362(a)), which explicitly prohibits the continuation of an action in state court seeking to determine the division of property that is property of the estate. Because Washington state law mandates that courts must equitably dispose of *all* community property during a divorce, the state court action involving property division is necessarily stayed by federal law. Consequently, continuance of the state court property division trial is not a "delay tactic" by the Debtor but an action *required* and imposed by the overriding authority of the Bankruptcy Code automatic stay.

**B. Administrative Claims Regarding Counsel Employment**

Nadlan criticizes the Debtor for the failure of her counsel to obtain prompt court approval for employment and compensation. This challenge relates exclusively to administrative matters governing professional compensation under 11 U.S.C. § 327 and § 330.

Such procedural requirements are entirely collateral to the Debtor's substantive, statutory right to claim a homestead exemption, which is a fixed right derived solely from her verifiable residency on the petition date. The potential consequence of delayed approval—the risk that counsel's time may be partially uncompensated—falls entirely on the attorney, Richard Pope, and, if anything, benefits the creditors of the bankruptcy estate by potentially lowering administrative costs. It is legally untenable for Nadlan to use this administrative detail as a pretext to deny the Debtor's substantive constitutional right to shelter.

**C. Nadlan's Equitable Standing is Compromised**

Nadlan's equitable position, which drives its pursuit of the Debtor's family home, is significantly diminished by the Debtor's assertion of Nadlan's own historical conduct. The Debtor alleges that Nadlan was a manager and member of Friendly Old Folks Home LLC alongside Daniel Suciu and his prior attorney, James Deal.

In that capacity, the managers, including Nadlan, allegedly breached fiduciary duties under RCW 25.15.038 by failing to oversee operations or enforce a timely market sale of the underlying asset. This suggests that Nadlan's own negligence and failure to mitigate its loss

RESPONSE OF DEBTOR CRISTINA SUCIU TO OBJECTION TO HOMESTEAD EXEMPTION -- 11

**Lake Hills Legal Services PC**
**15600 N.E. 8th St., # B1-358**
**Bellevue, Washington 98008**
**Telephone: (425) 829-5305**
**E-mail: rp98007@gmail.com**

contributed to the financial situation it now seeks to remedy by stripping the Debtor and her severely disabled dependents of their home. This failure on the part of Nadlan severely limits its equitable right to pursue such an aggressive action against a family unit protected by the constitutional mandate of the homestead laws.

## VII. Conclusion

Debtor Cristina Suciu has met the strict, fact-based test for automatic homestead entitlement under RCW 6.13.040(1) by establishing continuous, verifiable residency at the Woodinville Property for over one year prior to the petition date of August 28, 2025.

This right is reinforced by several layers of legal defense: the constitutional mandate to protect family shelter; the express authorization under RCW 6.13.020 for separate homesteads claimed by estranged spouses residing in distinct properties; and the statutory good faith proven by long-term occupancy, consistent with the precedent of *Clark v. Davis*, 37 Wn.2d 850, 226 P.2d 904 (1951). Furthermore, the Debtor has systematically deconstructed Nadlan's collateral challenges: demonstrating the legal necessity of dissolution case delays due to the automatic stay, separating administrative issues from substantive rights, and refuting valuation issues as irrelevant to exemption entitlement. The Debtor's realistic equity calculation confirms that the property's value falls entirely within the statutory protection limit, but valuation does not matter.

Nadlan's Objection, motivated by asset recovery rather than statutory interpretation, fails to establish any legal or factual basis for denying the exemption. The Debtor's established residency, the need to protect her severely dependent daughters, and the likelihood of judicial lien avoidance under 11 U.S.C. § 522(f) overwhelmingly compel the confirmation of the homestead claim. The Court is therefore urged to overrule Nadlan Group LLC's Objection (Dkt. 40) in its entirety and sustain Cristina Nicoleta Suciu's statutory homestead exemption of $968,300.00 in the Woodinville Property.

RESPONSE OF DEBTOR CRISTINA SUCIU TO
OBJECTION TO HOMESTEAD EXEMPTION -- 12

**Lake Hills Legal Services PC**
**15600 N.E. 8th St., # B1-358**
**Bellevue, Washington 98008**
**Telephone: (425) 829-5305**
**E-mail: rp98007@gmail.com**

Respectfully submitted on November 14, 2025.

/s/ *Richard L. Pope, Jr.*
RICHARD L. POPE, JR.
WSBA # 21118
Attorney for Debtor

**CERTIFICATE OF SERVICE**

**Richard L Pope, Jr on behalf of Debtor Cristina Suciu**
**rp98007@gmail.com**

**United States Trustee**
**USTPRegion18.SE.ECF@usdoj.gov**

**Conner W Morgan on behalf of Creditor Nadlan Group LLC**
**connerm@schweetlaw.com**, **alis@schweetlaw.com**; **karenl@schweetlaw.com**; **maureenf@schweetlaw.com**

**Amy Freeman on behalf of Health Care Ombudsman Patricia Hunter**
**amy@amyfreemanlaw.com**

**Matthew J.P. Johnson on behalf of US Trustee United States Trustee**
**matthew.j.johnson@usdoj.gov**, **Young-Mi.Petteys@usdoj.gov**; **Yash.J.Chohan@usdoj.gov**; **Brian.b.braun@usdoj.gov**

**Kristian Beckett on behalf of Creditor Gaile Johnson**
**kristian@beckettlegal.com**

**Michael M Sperry on behalf of Interested Party Courtesy NEF**
**michaels@schweetlaw.com**, **alis@schweetlaw.com**; **maureenf@schweetlaw.com**; **karenl@schweetlaw.com**; **travise@schweetlaw.com**

DATED: November 14, 2025.

/s/ *Richard L. Pope, Jr.*
RICHARD L. POPE, JR.

RESPONSE OF DEBTOR CRISTINA SUCIU TO OBJECTION TO HOMESTEAD EXEMPTION -- 13

**Lake Hills Legal Services PC**
**15600 N.E. 8th St., # B1-358**
**Bellevue, Washington 98008**
Telephone: (425) 829-5305
E-mail: rp98007@gmail.com