The Honorable Timothy W. Dore
Chapter 11

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re<br><br>CRISTINA NICOLETA SUCIU,<br><br>Debtor. | Case No. 25-12395-TWD<br><br>PCO'S FIRST REPORT |

Pursuant to 11 U.S.C. § 333(b)(2), Patricia Hunter, the Washington State Long-Term Care (LTC) Ombudsman, in her capacity as the Patient Care Ombudsman (PCO) for this matter, hereby files the PCO's First Report.

## I.     EXECUTIVE SUMMARY

Two visits were made to the adult family home Lake Leota Senior Care ("adult family home" or "home"), located at 16028 NE 184th Place, Woodinville, WA 98072 on October 28 and November 14, 2025. The PCO does not have concerns about the quality of care of the individuals living in the adult family home and receiving care ("residents"). The PCO is, however, concerned about protecting the health, safety, welfare, and rights of the residents if the adult family home were to be sold.

FREEMAN LAW OFFICE
1037 NE 65th St. #82951
Seattle, WA 98115
(206) 491-8843
amy@amyfreemanlaw.com

## II. FACILITY OVERVIEW

### A. Brief Legal Background

The adult family home provides personal care services (dressing, bathing, etc.), medication management, social activities, meals, housekeeping, and supports for memory and mental health needs. In addition to many other requirements, the adult family home must care for Residents in a manner and in an environment that promotes maintenance or enhancement of quality of life. The Residents should have a safe, clean, comfortable, and homelike environment. RCW 70.129.005.

### B. Observations

Five Residents currently live in the adult family home, which is licensed for six people. The home appeared to be a clean, well-run home with above-average staffing, excellent food and supply management, secure storage of medications and chemicals, and residents who report satisfaction with care and food. Medical supplies, PPE, first aid supplies, and personal care products were abundant and well-organized. Minor improvements could include easier access to the visitor log and perhaps more activities for residents.

## III. RESIDENTS RECEIVING CARE

### A. Brief Legal Background

Residents in the adult family home retain their basic civil and legal rights. RCW 70.129.005. Residents also acquire a new set of rights under the Long-Term Care Resident Rights Act. RCW 70.129.007. Residents have the legal status of "vulnerable adults" with additional protections under the Vulnerable Adult Protection Act. RCW 74.34.020(21)(d). If the adult family home accepts Medicaid as a payment source, Residents have additional rights under federal law. *See*, *e.g.*, 42 CFR § 441.301.

FREEMAN LAW OFFICE
1725 NW Market St. #219
Seattle, WA 98108
(206) 491-8843
amy@amyfreemanlaw.com

**B. Observations**

All Residents were visited except for one resident who was asleep for each visit. All residents appeared clean and well groomed. The youngest resident (age 60) lives in her own room in the home where her mother (age 91) also lives and has her own room. The other residents range in age from 82 to 92.

Questions were asked regarding care, services, meals, assistance, and visitors. Residents expressed being happy and liking the adult family home. Engagement activities include TV, bingo, puzzles, and outings with family. A few residents said they did enjoy the food but felt like there could be more variety.

Staff reported family involvement is strong, with frequent visits. One resident reported that his family lives close by and he sees them often. Another resident had an adult son present for each site visit. No visitor log was present, however. Upon request, staff took about ten minutes trying to find a sign-in sheet.

### IV. STAFF PROVIDING CARE

**A. Brief Legal Background**

Christina Suciu ("Licensed Provider") is the person licensed under Chapter 70.128 RCW to operate the adult family home. The Licensed Provider can provide care to Residents and is ultimately responsible for the day-to-day operations of the adult family home. RCW 70.128.130(1). The Licensed Provider must ensure that staff who provide care to Residents are competent and receive necessary training to perform assigned tasks. Staff must satisfactorily complete state-approved staff orientation, receive basic training, take continuing education classes, and fulfil other requirements. RCW 70.128.130(16).

FREEMAN LAW OFFICE
1725 NW Market St. #219
Seattle, WA 98108
(206) 491-8843
amy@amyfreemanlaw.com

**B. Observations**

Staff were cooperative during the unannounced visit and demonstrated pride in the cleanliness and supply management of the home. All caregivers stated they take turns giving meds, and nurse delegation is in place. Staff emphasized resident choice and were observed to be attentive and respectful in their interactions with residents. Staff described the provider as responsive and that this is the best adult family home they've ever worked at.

## V. NON-RESIDENT OCCUPANTS OF THE FACILITY

**A. Brief Legal Background**

In addition to the Residents living in the adult family home, the Licensed Provider must either reside there or have a qualified resident manager residing in the adult family home. Exemptions are permitted for good cause. RCW 70.128.130(12). Family members, caregivers, and other individuals are also permitted to live in the adult family home, including children and adults related to the Licensed Provider who "require personal or special care." WAC 388-76-10003(2)-(3); -10030(1)(d). The licensing capacity for serving Residents, which is generally six, may be adjusted to due to changes in the household mix or structure, including the number of other individuals (who are not Residents) receiving personal or special care in the home. WAC 388-76-10030(3).

**B. Observations**

Per the caregivers present during the visit, all caregivers live on-site, including the provider, who was not present at the time of the unannounced visits. During the second visit, the caregivers indicated that the provider doesn't always stay there but that she is there daily, checking on things and bringing whatever they need.

FREEMAN LAW OFFICE
1725 NW Market St. #219
Seattle, WA 98108
(206) 491-8843
amy@amyfreemanlaw.com

# VI. POSSIBLE SALE OF THE HOME

### A. Brief Legal Background

If the home is sold, the Licensed Provider must abide by all licensing and resident rights laws before closing and discharging the vulnerable adults who live there. Residents have the legal right to remain in the adult family home unless one of five permissible reasons for discharge applies. Closure of the adult family home is among one of the five lawful reasons that a long-term care facility may lawfully discharge a resident. RCW 70.129.010(1).

Before the adult family home discharges a resident, the adult family home must "[f]irst attempt through reasonable accommodations to avoid the transfer or discharge, unless agreed to by the resident." RCW 70.129.010(3)(a). If discharge is unavoidable, the adult family home must provide 30 days' written notice of the discharge to each resident and each resident's representative. RCW 70.129.010(3)(b). The adult family home must also "provide sufficient preparation and orientation to residents to ensure safe and orderly transfer or discharge from the facility." RCW 70.129.010(6). If closure is voluntary, the adult family home must "[d]evelop, organize, and carry out a discharge plan that meets the needs of each resident." WAC 388-76-10210(1)-(2).

### B. Observations

Resident relocation due to closure is one of the most concerning and disruptive events that can happen to the vulnerable adults living in a long-term care facility. Many residents experience "transfer trauma," also known as relocation stress syndrome. Residents who are involuntarily moved from the home may experience a loss of control, disruption of their routines, and challenges in adapting to unfamiliar surroundings, staff, and other residents. Symptoms can include changes in mood, behavior, sleep, and appetite. In severe cases, transfer trauma may lead to increased falls, illness, or even death.

FREEMAN LAW OFFICE
1725 NW Market St. #219
Seattle, WA 98108
(206) 491-8843
amy@amyfreemanlaw.com

The Residents in the adult family home all have some form of cognitive loss and one resident has a developmental disability. It could be challenging for some to find a new home especially one that is close to their families as this one is. It could also be challenging for the mother/daughter residents to find a home together.

If the adult family home is sold, every effort should be made to lessen the possibility of transfer trauma for these vulnerable adults. This includes creating detailed discharge plans with summaries of each resident's medical, mental, and social needs. To reduce the impact, the residents and their representatives must be involved in the planning process as much as possible. Residents will need significant emotional support and reassurance. Clear and consistent communication will be vital.

## VII. CONCLUSION

The PCO has no concerns about the quality of care received by Residents at the adult family home but is concerned about the possible implications for the residents' health, safety, welfare, and rights in the event the adult family home is sold. In preparation for the next report, the PCO intends to initiate communication with the Licensed Provider and the Resident's representatives. As required by 11 U.S.C.A. § 333(b)(1), the PCO also intends to interview one or more physicians.

DATED this 18th day of November 2025 at University Place, Washington.

      /s/ Patricia Hunter
      Patient Care Ombudsman

PCO'S FIRST REPORT - 6

FREEMAN LAW OFFICE
1725 NW Market St. #219
Seattle, WA 98108
(206) 491-8843
amy@amyfreemanlaw.com